IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAYTON DOBBINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-0388-N |
| | § | |
| CRAIG MARTIN, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

This Order addresses Defendant Craig Martin's motion for summary judgment [12]. Because Martin is entitled to qualified immunity on Plaintiff Clayton Dobbins' excessive force claim, the Court grants the motion.

**I. ORIGINS OF THE MOTION**

This case arises from an encounter between Dobbins and Martin on July 11, 2014, in which Martin used force to subdue Dobbins while arresting him. Martin, a police officer with the City of Irving, observed Dobbins leaving his residence on a bicycle. *See* Pl.'s Original Compl. ¶¶ 4–6 [1]. Martin, who had never seen Dobbins, attempted to stop and question Dobbins because daytime property crimes had been occurring in that area. *See id*. ¶¶ 7–8; Def.'s Summ. J. Br. 3 [18]. Dobbins rode away from Martin. *See* Pl.'s Original Compl. ¶ 9. Martin turned his car around to attempt again to stop and question Dobbins. *See id.* ¶ 10. While riding away from Martin, Dobbins ran a stop sign on his bicycle. *See id.* ¶ 14. Shortly thereafter, Martin yelled at Dobbins that he was under arrest and told him to

ORDER – PAGE 1

stop. *See id*. ¶¶ 15–16. Martin and Dobbins dispute whether Dobbins willingly stopped at the next intersection or whether Martin, having run out of his patrol vehicle, forcibly stopped Dobbins. Dobbins claims that Martin charged towards him and attempted to violently tackle him. *See id*. ¶¶ 20, 23. Dobbins claims that he stood his ground against Martin's violent charge. *See id*. ¶ 24. Martin claims that he unsuccessfully tried to employ an arm bar takedown and a leg sweep on Dobbins. *See* Def.'s Summ. J. Br. at 4. Throughout the struggle, Martin repeatedly ordered Dobbins to get on the ground. *See id*. Martin then deployed his taser on Dobbins for five seconds, at which time Dobbins fell to the ground. *See id*. Backup officers arrived on the scene. *See id*. The officers handcuffed Dobbins, took him into custody, and charged him with evading arrest and running a stop sign. *See id*. The District Attorney's Office dropped the evading arrest offense, and Dobbins pled no contest to the traffic offense. *See id*.

Martin now moves for summary judgment, arguing that he is protected by qualified immunity. Dobbins opposes the motion.

## II. THE LEGAL STANDARDS

### *A. The Summary Judgment Standard*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369

stop. *See id*. ¶¶ 15–16. Martin and Dobbins dispute whether Dobbins willingly stopped at the next intersection or whether Martin, having run out of his patrol vehicle, forcibly stopped Dobbins. Dobbins claims that Martin charged towards him and attempted to violently tackle him. *See id*. ¶¶ 20, 23. Dobbins claims that he stood his ground against Martin's violent charge. *See id*. ¶ 24. Martin claims that he unsuccessfully tried to employ an arm bar takedown and a leg sweep on Dobbins. *See* Def.'s Summ. J. Br. at 4. Throughout the struggle, Martin repeatedly ordered Dobbins to get on the ground. *See id*. Martin then deployed his taser on Dobbins for five seconds, at which time Dobbins fell to the ground. *See id*. Backup officers arrived on the scene. *See id*. The officers handcuffed Dobbins, took him into custody, and charged him with evading arrest and running a stop sign. *See id*. The District Attorney's Office dropped the evading arrest offense, and Dobbins pled no contest to the traffic offense. *See id*.

Martin now moves for summary judgment, arguing that he is protected by qualified immunity. Dobbins opposes the motion.

## II. THE LEGAL STANDARDS

### *A. The Summary Judgment Standard*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. The Qualified Immunity Standard

"Qualified immunity is a defense available to public officials performing discretionary functions ' . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Because qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that it does not apply. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). In the summary judgment context, courts "no longer [permit the plaintiff to] rest on the pleadings" and, instead, consider the evidence in the record in the light most favorable to the plaintiff. *McClendon*, 305 F.3d at 323 (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

In accordance with the *Saucier* test, the plaintiff must demonstrate a genuine issue of material fact: "(1) that the defendants violated the plaintiff's constitutional rights and (2) that

the violation was objectively unreasonable." *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992)). Stated more simply, to resolve a public official's qualified immunity claim, a court must consider two factors. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.*

"The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 235. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### III. MARTIN IS ENTITLED TO SUMMARY JUDGMENT

Dobbins claims that Martin used excessive force in violation of Dobbins' constitutional rights under the Fourth Amendment. Martin is entitled to summary judgment because Dobbins fails to raise a genuine issue of material fact that Martin's use of force was objectively unreasonable.

An excessive force claim requires proof of "(1) an injury, (2) which resulted from the use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable." *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) (internal quotation marks and citation omitted). Martin argues that Dobbins fails to meet the third prong of this test. To survive summary judgment, Dobbins must

produce evidence that raises a genuine issue of material fact that Martin's use of force was objectively unreasonable.

When evaluating the objective reasonableness of an officer's conduct, courts must "pay careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 276 (5th Cir. 2015) (internal quotation marks and citation omitted). Courts should "make 'allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). When evaluating an officer's use of force, courts must view the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). "Our inquiry is whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (internal quotation marks and citations omitted).

Martin submits evidence that his conduct was reasonable. Specifically, Martin provides dash cam footage showing that Dobbins ran a stop sign,[1] that Martin ordered

---

[1] *See* App. to Mot. for Summ. J., Ex. A [14] ("Dash Cam Video Recording"),00:48–00:54 [14-1].

Dobbins to stop riding his bicycle,[2] that Martin informed Dobbins that he was under arrest,[3] and that Dobbins failed to stop until reaching the end of the block and turning a corner.[4] After Martin pursued Dobbins around the corner, visuals from the dash cam video became obstructed.  However, the dash cam video picks up the audio of Martin telling Dobbins five times to get on the ground.[5]  The testimony of Martin and Dobbins is consistent in revealing that Dobbins did not get on the ground at Martin's request.  At this point, Martin deployed his taser.  Martin argues that his increasing use of force corresponded to Dobbins' escalating resistance – he told Dobbins to stop because he was under arrest, he repeatedly told Dobbins to get on the ground due to his noncompliance, he attempted to employ an arm bar takedown and a leg sweep on Dobbins, and because of "Dobbins' disregard of Martin's verbal instructions and his active physical resistance," Martin resorted to using his taser to control the situation.  Def.'s Summ. J. Br. at 4.  "Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance."  *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *see also Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) ("Because [plaintiff], upon refusing to turn around and be handcuffed, posed an 'immediate threat to the

---

[2]*See id.* at 00:54 (Martin tells Dobbins to "pull over.") and 01:12 (Martin tells Dobbins, "You ran the stop sign.  Come here.").

[3]*See id.* at 01:15.

[4]*See id.* at 01:15–01:25.

[5]*See id.* at 01:31, 01:33, 01:40, 01:44, and 01:47.

safety of the officers' and 'actively resist[ed]' the officers' instructions, the use of force was not 'clearly excessive.'") (quoting *Deville*, 567 F.3d at 167).

Dobbins argues that the degree of force used by Martin was not necessary to prevent Dobbins' escape because Dobbins never threatened Martin with a weapon or in any other manner, because Martin tackled Dobbins while he was standing still in compliance with Martin's order to stop, and because Dobbins only attempted to extricate himself from an unconstitutional application of force. *See* Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. 9 [18] ("Pl.'s Resp."). Dobbins argues that Martin's testimony that Dobbins attempted to resist arrest is controverted by Dobbins' own testimony. *See id*. Further, Dobbins notes that there was no charge for resisting arrest brought against him and that the District Attorney's Office dropped the evading arrest charge against him. *See id*. at 10. However, Dobbins acknowledges that he did not get on the ground after Martin repeatedly ordered him to do so. *See* App. to Pl.'s Br. in Supp. of Resp., Ex. B 13 [19] ("Dobbins Deposition") ("Q. And he was telling you to get on the ground? A. I believe he was. . . . Q. And, obviously, you didn't get on the ground? A. No, because I was telling him I – I hadn't done nothing and . . . ."). Further, Dobbins acknowledges that he "countered [Martin's] maneuvers to put [Dobbins] on the ground." *Id*. Thus, Dobbins fails to rebut that he actively resisted Martin's instructions. Though Dobbins testified that he willingly got off of his bike after turning the corner at the intersection, thus putting into question whether Martin needed to try to take him to the ground, the Court does not find Martin's actions objectively unreasonable under the circumstances. As Dobbins was not verbally cooperative with

Martin, and because Dobbins continued to pedal on his bike after Martin told him he was under arrest, the Court does not find Martin's escalation of force objectively unreasonable.

Additionally, Martin argues that he had reason to believe that Dobbins could potentially injure him. *See* App. to Mot. for Summ. J. 18 ("Q. Did you have any fear that Mr. Dobbins was going to injure someone? A. Potentially me."). Martin testified that Dobbins turned towards him and locked up with him in a "standing grappling position," which Martin described as Dobbins countering Martin's tactics "in order to keep [Martin] at a distance and keep [Martin] from being able to encroach on his space and conduct any sort of defensive tactic or pressure point control technique that [Martin] was attempting to use in order to gain compliance and control." *See id.* at 12, 18. Martin additionally testified that Dobbins "had a higher level of training than most normal people." *See id.* at 18. Faced with a non-compliant arrestee countering his maneuvers to gain control, Martin provides evidence that he reasonably feared that Dobbins could injure him. Whether Dobbins actually could have or would have injured Martin, Dobbins has not rebutted the factors that went into Martin's split-second decision to escalate his use of force against Dobbins.

The Court acknowledges the frustration Dobbins felt upon being stopped while leaving his own home. However, Dobbins does not submit objective evidence that controverts Martin's evidence relating to the reasonableness of his conduct in attempting to take custody of Dobbins after he ran a stop sign. Because Dobbins does not meet his burden to raise a genuine issue of material fact as to whether Martin's use of force was objectively reasonable, summary judgment is appropriate.

## CONCLUSION

Based on the forgoing reasons, the Court grants Martin's motion for summary judgment.

Signed May 4, 2017.

_____
David C. Godbey
United States District Judge